IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| RICHARD ROPER, SR., | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL ACTION NO. 04-0213-CB-C |
| CITY OF FOLEY, | ) | |
| Defendant. | ) | |

**OPINION and ORDER**

In this action, plaintiff Richard Roper, a sergeant with the City of Foley Police Department, asserts that the City discriminated against him on account of his race by refusing to promote him to the position of lieutenant. The City has filed a motion in which it asserts that it is entitled to summary judgment. (Doc. 28.) After considering the motion and supporting documents, plaintiff's response and evidence in opposition[1] and defendant's reply brief and accompanying evidence, the Court concludes that the defendant's motion is due to be granted.

**Findings of Fact** [2]

---

[1] On June 23, 2005, one day after plaintiff's response to the motion for summary judgment was due, plaintiff's counsel filed a motion requesting a one-week extension of time (until June 29th) to respond to summary judgment. (Doc. 33.) That motion was not ruled on. On June 29th, plaintiff's counsel filed a motion for a one-day extension of time. (Doc. 34.) That motion was not ruled on. On June 30th, counsel filed a brief in opposition to summary judgment that contained the style of this case and made a few references to the facts of this case; however, for the most part the brief addressed the facts and issue of an entirely different case. On July 1st, plaintiff's counsel finally filed a corrected brief (Doc. 37) that addressed defendant's motion for summary judgment.

[2] The findings of fact are stated in the light most favorable to the plaintiff to the extent that plaintiff has provided evidentiary support for facts he purports to dispute. The plaintiff has submitted a pleading entitled "Plaintiff's Response to Defendant's Undisputed Facts" (Doc. 36) wherein he states

Plaintiff Richard Roper, an African American, is a sergeant with the City of Foley Police Department ("the department"). He was hired November 5, 1990, was promoted to corporal in 1994 and was promoted to sergeant in 1996. In July 2002, Roper and others applied for a lieutenant position within the department. The vacancy was created when Lt. McKinley of the patrol division retired. Because the patrol position requires a large number of employees and extensive understanding of management and logistics, Police Chief Miller decided to fill the position by transferring an experienced lieutenant, Lt. Springsteen, from the department's investigations division and to promote a lower-ranking officer to fill Springsteen's position. Therefore, the retirement of Lt. McKinley, combined with the transfer of Lt. Springsteen, created an vacant lieutenant's position in the investigations division. Although Roper and other applicants believed that they were applying to be a lieutenant in the patrol division, they were considered only for the investigations division. Contrary to his belief, Roper was not the most senior applicant for the position. Sergeant Mark Alexander had the most seniority with the department. Alexander was hired on October 22, 1990, approximately two weeks before Roper. As far as seniority within rank, Alexander and Roper were the most senior of all the applicants, having been promoted to sergeant on the same date–June 3, 1996.

The promotion decision was made by Foley Mayor Tim Russell based on the recommendation of a review board, which consisted of three department members–Chief Miller, Capt. Carl Resmondo and Lt. Tommy Resmondo. After reviewing applicant files and interviewing each applicant, the review

---

his position as to enumerated findings of fact proposed by the defendant. However, plaintiff has cited absolutely no evidence in the record to support the disputes plaintiff has with defendant's facts (which do have evidentiary support). Because plaintiff has not properly supported these asserted disputes with evidence in the record, see discussion, p. 6, *infra*, the Court does not consider them to be genuine.

board unanimously recommended Sergeant David White for the position.  Mayor Russell followed the board's recommendation and promoted Sgt. White to the lieutenant's position.

The review board recommended White over Roper, who had more seniority, because White performed better in his interview, had a more outstanding service record and a better disciplinary record.  Specifically, according to Chief Miller, White "articulated his reasons for wanting the promotion and his opinions concerning the Investigation's [sic] Division and how he would continue to operate the division" whereas Roper "could only articulate his reason for wanting the Lieutenant position to be based on his seniority."  (Doc. 30,  Ex. 2.)  White's service record included a July 2002 commendation letter from United States Senator Jeff Sessions for his work with the Baldwin County Drug Task Force.  White had no significant disciplinary history during his 9 years with the Foley Police Department.  In contrast, Roper's personnel file reflected the following information regarding Roper's performance and discipline:

-a 5-day suspension in 1991 for being involved in a physical altercation and failing to report use of force;

-written warning in May 1993 for losing his temper in a store;

-verbal warning in August 1993 regarding improper handling of a dispute between a merchant and a customer;

-required to apologize in January 1995 for filing an unjustified internal affairs complaint against 3 officers;

-written warning in 1999 for misuse of the criminal justice system;

-counseled in December 2000 for failing to properly complete and file daily report forms;

-suspended for one day in January 2001 for insubordination;

-refused to sign performance review in June 2001 which assessed his performance as average.

Roper believes that many of these disciplinary actions are the result of unfair treatment due to his race, although he does not provide specifics as to each of the disciplinary actions. When Roper was hired, then-Chief Anderson made it clear that he was on the force only because Anderson was under public pressure to integrate the police force and that Anderson could fire him at any time. When Roper received the first disciplinary action against him, Anderson told Roper that "as a probationary officer" he had no right to contest the action. Prior to his promotion to corporal in 1994, Roper was disciplined either for minor infractions that were not supported by sufficient evidence or for minor infractions for which white officers were not disciplined. Furthermore, Lt. McKinley, who supervised Roper during much of his career, did not like Roper, and "rode his back" during Roper's entire career. Lt. McKinley also told racial jokes and made "off-color remarks" about minorities. Some of the disciplinary actions against Roper were taken by McKinley or were instigated by him. Roper believes that some of the discipline against him occurred because he attempted to address racial issues within the department which included racial graffiti at the firing range and racially offensive materials on the department bulletin board.

Roper cites evidence to dispute two specific incidents that led to disciplinary action against him. First, Roper was suspended for insubordination because McKinley said that Roper had cursed him. Roper did not curse Lt. McKinley, but Capt. Resmondo took McKinley's word over Roper's and suspended Roper. Second, the department determined that Roper was not the officer who misused the NCIC system; however, the discipline remained on Roper's record.

Roper filed a charge of discrimination with the EEOC on September 26, 2002, and received a right-to-sue letter on January 16, 2004. He filed the instant action *pro se* on April 7, 2004 asserting a claim for discriminatory failure to promote under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. 2000e. On August 25, 2004, plaintiff's counsel filed an amended complaint reasserting the failure-to-promote claim and adding a second claim for retaliation, both under Title VII.

**Issues Raised**

The City, citing evidence in the record, contends that is entitled to summary judgment on both of plaintiff's claims. Regarding the failure-to-promote claim, the defendant asserts that the promotion was awarded to Sergeant White not because of race but because he had a better interview, a better disciplinary record and a better performance record. As to the retaliation claim, defendant asserts that the alleged retaliatory conduct plaintiff identified in his deposition (failing to inform him of the promotion decision and allowing citizens to lodge verbal, as opposed to written complaints) is, first, not substantial enough to be actionable and, second, not linked to the EEOC charge by any evidence of a causal connection. In response to the summary judgment motion, plaintiff argues that the reasons asserted for the promotion decision are untrue and are merely pretext for discrimination. Plaintiff makes no response, however, to defendant's argument, or to defendant's evidence, that it is entitled to summary judgment on the retaliation claim. Because it appears that plaintiff has abandoned his retaliation claim, the Court will address only the failure-to-promote claim.

**Conclusions of Law**

### Summary Judgment Standard

Summary judgment should be granted only if "there is no issue as to any material fact and the

moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has satisfied his responsibility, the burden shifts to the nonmoving party to show the existence of a genuine issue of material fact. *Id*.

To demonstrate a genuine issue of material fact in opposition to summary judgment a party may rely on affidavits, depositions, answers to interrogatories and admissions. *Celotex v. Catrett*, 477 U.S. 317, 324 (*citing* Fed. R. Civ. P. 56(c)). And "[i]f the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991) (quoting *Celotex,* 477 U.S. at 323 (1986)) (footnote omitted). "In reviewing whether the nonmoving party has met its burden, the court must not weigh the evidence or make credibility determinations and must draw all inferences in favor of the nonmoving party." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992).

It is important to note that the factual disputes raised by the nonmoving party must be both *material and genuine*. "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "'Genuine disputes are those in which the evidence is such that a reasonable jury could return a verdict for the non-movant.

For factual issues to be considered genuine, they must have a real basis in the record.'" *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996) (quoting *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913, 918 (11th Cir. 1993)).

**Failure to Promote**

The following analytical framework is applied to Title VII disparate treatment claims based on circumstantial evidence, such as plaintiff's claim for failure to promote:[3]

> Because direct evidence of discrimination can be difficult to produce, the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 36 L.Ed.2d 668 (1973), created a framework on the burden of production and order of presentation of proof to analyze circumstantial evidence of discrimination. . . . To prove discriminatory treatment through circumstantial evidence: (1) a plaintiff must first make out a prima facie case, (2) then the burden shifts to the defendant to produce legitimate, nondiscriminatory reasons for the adverse employment action, and (3) then the burden shifts back to the plaintiff to establish that these reasons are pretextual.

*Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1375 (11th Cir. 1996) (internal citations omitted). Here, the plaintiff's ability to prove a prima facie case is presumed, and there is no question that the defendant has proffered reasons that are legitimate and nondiscriminatory. Summary judgment turns on plaintiff's ability to prove pretext.

Once the defendant has proffered legitimate nondiscriminatory reasons, the plaintiff must prove that those reasons are pretextual and that discrimination was the real reason for the decision. *Mayfield*, 101 F.3d at 1376-77. "[A plaintiff] may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's

---

[3]There is no direct evidence of discrimination in this case.

proffered explanation is unworthy of credence." *Id.* at 1377. When an employer has proffered multiple reasons for its decision, the plaintiff must come forward with sufficient evidence to create a genuine issue of material fact as to the truth of *each* of those reasons. *Chapman v. AI Transport,* 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc); *Combs v. Plantation Patterns*, 106 F.3d 1519, 1529 (11th Cir. 1997).

This case is complicated slightly by the confusion over the vacancy for which plaintiff was applying–lieutenant for the investigations division or lieutenant for the patrol division. When he submitted his application, plaintiff believed that the vacancy was in the patrol division.[4] His summary judgment brief addresses his qualification for both patrol and investigations. Defendant has proffered legitimate nondiscriminatory reasons for its decisions regarding both positions.

Regarding the patrol position, Chief Miller decided that a seasoned lieutenant should be transferred to replace Lt. McKinley because the position required managing a large number of employees and also required an extensive understanding of logistics. Plaintiff attempts to demonstrate that this reason is pretextual because: (1) the initial job announcement referred to Lt. McKinley's retirement; (2) several applicants believed they were applying for McKinley's position in patrol; (3) there was no discussion within the department regarding the need to move a seasoned lieutenant to patrol; (4) within the department, the patrol position has never been considered more vital or demanding than the investigations position and (5) many cases begin in patrol and are taken over by investigations. At the conclusion of these propositions, plaintiff cites his evidentiary support as "Pl

---

[4] Applications from other applicants also indicate that they believed they were applying to fill the lieutenant's position in the patrol division.

Declar at 3" [sic]. However, none of these propositions are contained anywhere in plaintiff's declaration. (Doc. 35, Ex. 1.) Even if they were, they do not undermine the legitimacy of Chief Miller's reasons. Neither the clarity of the job announcement, the applicants' understanding of the position they were applying for, nor the progression of cases from patrol to investigations tend to prove that Miller did not consider the position to require a seasoned lieutenant. While the department's "view" regarding the importance of one position over the other might be probative, the department is made up of individuals, and there is no evidence from any of those individuals to support that view.[5]

Regarding the investigations position, the City has proffered three reasons for promoting White over the plaintiff. First, White performed better in his interview. Second, plaintiff had an extensive disciplinary record; White did not. Third, White had received recognition for his job performance from sources outside the department. Plaintiff attempts to discredit these reasons both by attacking the credibility of defendant's purported reliance on his disciplinary record and by presenting circumstantial evidence that he contends demonstrates that defendant's decision was more likely motivated by race. In both instances, plaintiff's evidence falls short.

Plaintiff makes a credibility attack on only one of defendant's proffered reasons--reliance on disciplinary records.[6] According to plaintiff many of the disciplinary matters on his record are

---

[5]Even if plaintiff's declaration included a statement regarding the department's "view," it would be based on either his opinion or hearsay, both of which are inadmissible. Fed. R. Evid. 701, 801 & 802.

[6]Plaintiff also makes an attempt to challenge either White's performance or disciplinary record, it is not clear which, by pointing out that White lost his service weapon shortly before the promotion and was not disciplined for it. Plaintiff argues that White was not disciplined for this infraction because of his race. While plaintiff does not connect this scenario to his pretext claim, one might argue that disciplinary records tainted by race and could not be relied upon as non-discriminatory reasons. Even

9

inconsequential, specifically those that occurred before he was made sergeant, because those incidents did not prevent him from being promoted in the past.  This argument misses the mark, however, because plaintiff's disciplinary record standing alone was not the reason.  It was the *comparison* of plaintiff's record to White's record that gave White the edge over plaintiff.  Even assuming that the disciplinary actions disputed by plaintiff should not be considered, he has not demonstrated that his disciplinary record was better than White's.

Plaintiff alternatively argues, at least implicitly, that none of the reasons actually motivated the defendant and that discrimination can be inferred from a change in promotion procedure.  According to plaintiff, "the customary procedure of handling promotions within the Foley Police Department is now, and has always been, that the most senior qualified individual would receive any available promotion. . . [and] [t]he only deviation from this established procedure occurred in 2002, when Plaintiff was next most senior sergeant in line to move up to the position of lieutenant."  (Pl.'s Brf. at 11.)  This argument fails because the facts do not support it.  The defendant has presented evidence, which is uncontradicted by plaintiff,[7] that Sgt. Mark Alexander had more seniority in the department than the plaintiff and had equal time in rank.[8]

---

so, the argument fails because plaintiff has presented no evidence whatsoever that race played any role on the department's apparent decision not to discipline White.

[7]Plaintiff does cite his own declaration for the proposition that "[n]o other sergeant on the force has been employed longer than Plaintiff, or has served as 'sergeant' longer than Plaintiff." (Pl.'s Brf, Doc. 37, at 5.)  Again, no such statement is contained in the declaration submitted with plaintiff's summary judgment response.  (Doc. 35, Ex. 1.)  Even if plaintiff's declaration contained such a statement, it is clearly contradicted by the City's employment records.

[8]Plaintiff also argues that the events surrounding the decision were subjective and arbitrary, and, therefore, there is a genuine issue of material fact as to discriminatory motive.  This argument is specious

**Conclusion**

The City of Foley has proffered legitimate nondiscriminatory reasons for its decision not to promote the plaintiff to the vacant lieutenant's position in September 2002.  In response to the motion for summary judgment, plaintiff has failed to point to actual evidence in the record from which a jury could conclude that discrimination, rather than the reasons given by the City, was the motivating factor for the decision.  Accordingly, it is **ORDERED** that the City's motion for summary judgment be and hereby is **GRANTED**.

**DONE** this the 11th  day of August, 2005.

*s/Charles R. Butler, Jr.*
**Senior United States District Judge**

---

for two reasons.  First, subjectivity is not a death knell.  "A subjective reason is a legally sufficient legitimate nondiscriminatory reason if the defendant articulates a clear and reasonably specific factual basis upon which it based its subjective opinion."  *Chapman*, 229 F.3d at 1034.  Second, plaintiff's examples of subjectivity and arbitrariness, are merely restatements of prior arguments addressed and rejected above, *e.g.*, the alleged change in promotion procedures and the decision to transfer of Lt. Springsteen to the patrol division.